**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| KARI WHEELER, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>BOARD OF DIRECTORS OF STERLING )<br>FREE PUBLIC LIBRARY, et al., )<br>)<br>Defendants. ) | Case No.: 23-2401-EFM-ADM |

**MEMORANDUM AND ORDER**

Plaintiffs Kari Wheeler, Brandy Lancaster, Samantha Corwin, and Audra Asher (collectively, "plaintiffs") bring this action against defendants the Board of Directors of Sterling Free Public Library ("Library Board"); the City of Sterling, Kansas ("City"); and four individuals who are members of the Library Board ("Board Members") (collectively, "defendants"). Plaintiffs assert a variety of claims arising from the Library Board's refusal to purchase certain books, removal of a library display, and firing of Wheeler and Lancaster from library employment. (ECF 43.) This matter is now before the court on plaintiffs' Motion for Leave to File Second Amended Complaint. (ECF 68.) By way of the motion, plaintiffs seek leave to file a Second Amended Complaint that adds three new claims by Wheeler against the Library Board and City related to her library wages and retirement benefits. For the reasons explained further below, the court grants plaintiffs' motion.

**I.     BACKGROUND**

Plaintiffs filed this action on September 12, 2023. According to the complaint, Wheeler and Lancaster worked at the Sterling Free Public Library, and Corwin and Asher were library patrons. (ECF 1, at 3.) The Library Board operates the library, with funding from the City. (*Id.*

at 4.)  The City appoints the Board Members, approves the Library Board's actions, and includes "library staff in its KPERS [Kansas Public Employees Retirement System] contributions." (*Id.* at 4.)

The Library Board hired Wheeler on August 1, 2022, as the Library Director.  Wheeler's employment with the library was short-lived, however.  Plaintiffs allege that in late Spring and early Summer of 2023, a dispute arose between Wheeler and certain Board Members about whether the library should purchase books with a non-binary character and/or host a display with rainbow-colored symbols that some interpreted as supporting gay rights.  On July 5, 2023, the Library Board voted to terminate Wheeler.  As relevant to the current dispute, Count I of the complaint alleges that defendants terminated Wheeler in retaliation for Wheeler speaking out on matters of public concern, and Wheeler sought damages "for past lost wages and benefits."  (ECF 1, at 25.)

On November 29, 2023, the court entered a scheduling order that set a deadline of January 8 for motions to amend pleadings and a deadline of April 19 for the close of discovery.  (ECF 29.) On January 8, plaintiffs sought leave to file a first amended complaint, which the court granted as unopposed.  (ECF 37, 42.)

On March 15, plaintiffs filed the instant motion for leave to file a second amended complaint. (ECF 68.)  Plaintiffs' proposed second amended complaint seeks to add new facts and claims related to Wheeler's KPERS account.  Specifically, plaintiffs propose to add allegations that (1) the Library Board promised Wheeler that she was eligible for KPERS benefits through the City, (2) Wheeler provided monthly checks to the City for her KPERS contributions, which were deducted from her wages, (3) more than one year after Wheeler began submitting the checks, KPERS notified the City that Wheeler was not eligible for KPERS benefits and the City so notified

2

the Library Board, (4) neither the City nor the Library Board notified Wheeler of her ineligibility nor refunded her wage contributions. (ECF 68, at 25-26.) Based on these allegations, plaintiffs seek to add new claims for breach of contract, violation of the Kansas Wage Payment Act, and violation of 42 U.S.C. § 1983 (due process). (*Id.* at 67-69.)

**II.     ANALYSIS**

As noted above, the scheduling-order deadline for motions to amend the pleadings was January 8. Where the deadline for a motion to amend the pleadings has expired, the party seeking leave to amend must first demonstrate good cause for modifying the scheduling order under FED. R. CIV. P. 16(b)(4) and thereafter satisfy the standards for amendment under FED. R. CIV. P 15(a). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Whether to grant a motion to amend is within the court's sound discretion. *Id.* Applying the Rule 16 and 15 standards in turn, the court concludes below that plaintiffs' motion should be granted.

**A.     Plaintiffs Have Demonstrated Good Cause for the Late Amendment**

A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (quoting *Gorsuch*, 771 F.3d at 1241). "Trial courts have considerable discretion in determining what kind of showing satisfies this good cause standard." *Id.* (quoting 3 James Wm. Moore, Moore's Federal Practice - Civil § 16.14[1][b] (3d ed. 2019)). Courts usually find good cause "when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Id.* The "good cause requirement may be satisfied [when a party] learns new information through discovery." *Gorsuch*, 771 F.3d at 1240

The court easily finds good cause to extend the scheduling-order deadline in this case. Wheeler states, and defendants do not dispute, that she did not learn until mid-February (*i.e.*, after the January 8 amendment deadline) that there were problems with her KPERS contributions withheld from her library wages. She explains that when she recently accepted a new job at which she was likely KPERS eligible, she asked KPERS about her account. It was then that KPERS informed her that she did not have an account from her time at the library. This was information that defendants had learned earlier. The record reflects that the Library Board and City were aware as early as September 2023 that the City had never submitted Wheeler's contributions to KPERS. (ECF 79-3, at 1.) When the City tried to submit the contributions in October 2023, KPERS refused to accept them because the contributions were not "on behalf of a current employee." (*Id.* at 3.) The Board Members then discussed amongst themselves getting a lawyer involved in conveying the information to Wheeler and returning her contributions. (*Id.* at 2-3.) However, this never happened. There is no dispute that Wheeler did not learn about her lack of a KPERS account until KPERS personnel told her so in February 2024. On February 12, plaintiffs' attorney contacted the City's attorney to ask him to look into the fact that Wheeler's library paystubs show amounts deducted for KPERS but that "KPERS doesn't show [the City] paying in for Kari for 2023." (ECF 79-4.)

Wheeler's delayed knowledge of facts that she now seeks to plead was through no fault of her own. Even though Wheeler provided KPERS contribution checks to the City every month for approximately seven months of employment, and even though the City and the Library Board eventually learned that Wheeler was not eligible for KPERS benefits, no defendant told Wheeler about her ineligibility or refunded her wage contributions. Plaintiffs have been diligent in prosecuting this case, and nothing would have logically tipped off Wheeler to the fact that no

KPERS account existed—particularly when her pay stubs suggested otherwise. Defendants' assertion that Wheeler was careless in not knowing "there were issues with her KPERS account or eligibility" because she knew "prior to the January 8, 2024 deadline to amend that [her] KPERS account was, in some form, involved in this matter" is frivolous. (ECF 74, at 4.) An incorrect belief that Wheeler *had* a KPERS account at the time plaintiffs filed their complaint in no way supports defendants' argument that Wheeler should have been aware there was *no* actual account. Defendants suggest no reason why Wheeler would or should have investigated whether she was actually earning KPERS benefits. The court finds good cause to allow the late amendment to plaintiffs' complaint.

### B.     Amendment Is Allowed Under Rule 15(a)(2)

The court next considers whether to grant leave to amend under FED. R. CIV. P 15(a). Rule 15(a)(2) directs the court to "freely give leave [to amend] when justice so requires." In freely allowing leave to amend, the court provides litigants with "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018) (quoting *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1204 (10th Cir. 2006)). A court should only withhold leave to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Practically speaking, the party opposing a motion to amend bears the burden to demonstrate why the amendment should not be permitted. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (holding that in the absence of such a showing, amendment should be

allowed). Defendants oppose plaintiffs' request for amendment on three grounds: undue delay, undue prejudice, and futility. The court will address each argument in turn.

Undue Delay

Defendants argue that plaintiffs unduly delayed in seeking leave to add the KPERS-related facts and claims to this case because plaintiffs learned the information about Wheeler's KPERS account in mid-February but did not file their motion for leave to amend until March 15. Delay alone is not enough to deny a motion to amend. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). At some point, however, delay becomes undue when it places an unwarranted burden on the court or when it becomes prejudicial by placing an unfair burden on the opposing party. *Id.* In evaluating what constitutes undue delay sufficient to deny a motion to amend, the court must focus "primarily on the reasons for the delay." *Id.* at 1206 (10th Cir. 2006). Denial is appropriate where the party seeking amendment "has no adequate explanation for the delay." *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993); *see also Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) (noting that courts have "denied leave to amend in situations where the moving party cannot demonstrate excusable neglect," including "where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend").

Plaintiffs have adequately explained their reason for the short delay in filing their motion. As mentioned above, Wheeler only discovered the facts underlying the proposed amendments in February. She then informed her counsel. On February 12, plaintiffs' attorney contacted the City's attorney to ask him to look into the missing KPERS account, suggesting it may simply be an administrative error. (ECF 79-4.) Plaintiffs' counsel also contacted the Library Board's attorney to seek clarity on the situation. Plaintiff states that defense counsel "took some time to ask their

6

clients about what happened and reported that there was confusion about where the missing funds were and whether checks had been deposited and which entity had the money." (ECF 79, at 3.) Nonetheless, plaintiffs still prepared and filed their motion for leave to amend within about a month of discovering the new information. The court finds plaintiffs have adequately explained their delay in filing the motion. Moreover, as discussed below, the timing of plaintiffs' amendment does not impact the court's schedule for resolving this action or unfairly burden defendants. Under these circumstances, the court does not find undue delay.

Undue Prejudice

Next, defendants ask the court to deny plaintiffs leave to amend because such amendment would "substantially delay the progress of this action and prejudice defendants." (ECF 74, at 7.) Undue prejudice is the most important factor in determining whether to allow an amendment to the pleadings. *See Minter*, 451 F.3d at 1207. A party may be unduly prejudiced when an amendment unfairly affects a party preparing its defense. *Id.* "While any amendment invariably causes some practical prejudice, undue prejudice means that the amendment would work an injustice to the defendants." *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1168 (D. Kan. 2018); *see also* 6 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (recognizing a plaintiff typically will not be precluded from amending "simply because that amendment may increase defendant's potential liability").

Defendants allege that allowing plaintiffs to add three new causes of action "would require the parties to conduct additional written discovery and depositions to defend these three new claims" and that "the additional resources expended to retain experts, conduct additional depositions, and conduct discovery" will delay resolution of the action and prejudice defendants. (ECF 74, at 7.) The court is not persuaded by defendants' broad argument. Plaintiffs' proposed

7

new claims all relate to a discrete issue—how defendants processed Wheeler's KPERS contributions. The court does not imagine that discovery on this factual issue will be extensive, and cannot fathom any type of expert that defendants might retain on the issue (defendants do not suggest one). Defendants have not identified any specific information they need to obtain in discovery from plaintiffs. Indeed, plaintiffs' proposed new claims are premised on information defendants already have in their possession. Regardless, plaintiffs have agreed to additional limited discovery. (ECF 79, at 5.)

Moreover, the court can alleviate any potential prejudice to defendants by making slight adjustments to the pretrial schedule (while avoiding the "substantial delay" defendants fear). *See Pouncil v. Branch Law Firm*, No. 10-1314, 2011 WL 5837230, at *3 (D. Kan. Nov. 21, 2011) ("While allowing the late amendment will cause some prejudice to Defendants, it can largely be eliminated by extending some of the case deadlines."). Because this case is not yet set for trial, there is flexibility in the schedule. The pretrial conference currently is scheduled to occur May 21, and the parties likely could complete additional discovery by that date, but to ensure fairness to defendants, the court below extends remaining pretrial deadlines by a few weeks.

Although, as recognized above, almost any amendment invariably causes some "practical prejudice," defendants have not demonstrated that allowing the amendment would work an injustice. *Endecott v. Commercial Floorworks, Inc.*, No. 16-2190-JTM, 2017 WL 1650814, at *5 (D. Kan. May 2, 2017) ("While any amendment invariably causes some 'practical prejudice,' undue prejudice means that the amendment 'would work an injustice to the defendants.'" (citation omitted)); *Pouncil*, 2011 WL 5837230, at *3 (same). The court does not find any potential prejudice "undue," particularly where the slight prejudice to defendants is outweighed by the benefit of allowing all of plaintiffs' claims to be determined in a single action.

Futility

Finally, defendants urge the court to deny leave to amend on the ground that plaintiffs' proposed amended claims are futile. "A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). In the context of futility, the court often considers whether the amended complaint could withstand a Rule 12(b)(6) motion to dismiss. *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (collecting cases); *see also Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 199 (5th Cir. 2017) (court uses the 12(b)(6) standard when evaluating futility).

First, as to plaintiffs' proposed new breach-of-contract claim, defendants argue the claim is futile because "it is undisputed Wheeler did not have an employment contract with the Library Board or the City." (ECF 74, at 2.) Without considering the underlying truth of this statement (which plaintiffs contend "is ridiculous" (ECF 79, at 2)), the court finds it inconsequential. The argument fails to directly address the substance of plaintiffs' proposed claim, which alleges the Library Board breached an oral promise that Wheeler would receive KPERS benefits and that the City, by accepting Wheeler's payments without depositing them, breached a contract implied in fact. Defendants have not demonstrated that the claim, as pleaded, is futile.

Second, as to plaintiffs' proposed new claim that the Library Board violated the Kansas Wage Payment Act, for which Wheeler seeks "lost wages, penalties, compensatory damages, and attorney's fees" (ECF 65, at 38), defendants argue the claim is futile because (1) the City, not the Library Board, was the keeper of Wheeler's contributions and (2) in any event, "the claimed earned wages have been refunded to Wheeler." (ECF 74, at 6). The court declines to find this claim futile. As plaintiffs note, evidence in the record suggests that the Library Board did play some

9

role in directing the course of Wheeler's KPERS contributions. Moreover, though Wheeler's request for return of lost wages may now be moot, the other relief requested in this claim may not be.[1]

Third, defendants do not specifically address plaintiffs' proposed new Due Process claim asserting the Library Board and the City unlawfully deprived Wheeler of her property when they did not notify her of KPERS's decision and did return her contributions at that time. Defendants have not shown this claim to be futile, and the court would not find it so for the reasons outlined above regarding the other two claims.

The court cannot say that defendants have demonstrated plaintiffs' proposed new claims are clearly futile when the court views the factual allegations in plaintiffs' proposed second amended complaint in the light most favorable to plaintiffs. Thus, the court exercises its discretion and grants plaintiffs leave to assert the claims in their proposed amended complaint. To be clear, the court is not ruling that these amendments will survive a Rule 12(b)(6) or summary-judgment challenge. Rather, the court is allowing the amendment under Rule 15(a). Defendants are not precluded from reasserting their arguments in a more developed dispositive motion.

\* \* \* \* \*

In sum, defendants have not shown that plaintiffs unduly delayed seeking amendment or that amendment would be unduly prejudicial to defendants. None of the proposed amendments are clearly futile. Accordingly, the court finds amendment proper under Rule 15(a)(2). Given "the

---

[1] For example, the court finds that plaintiffs sufficiently alleged the Library Board "willfully" withheld Wheeler's wages, thereby bringing the penalty provision of the Kansas Wage Payment Act into play, by not timely refunding the contributions after learning KPERS would not process them.

absence of any apparent or declared reason" to disregard Rule 15(a)'s mandate "that leave to amend 'shall be freely given,'" the court grants plaintiffs' request to file an amended complaint.

**IT IS THEREFORE ORDERED** that plaintiffs' Motion for Leave to File Second Amended Complaint (ECF 68) is granted. Plaintiffs are directed to file their second amended complaint by **April 23, 2024**.

**IT IS FURTHER ORDERED** that to account for the new claims being asserted, the scheduling order (ECF 29) is amended as follows:

- Targeted discovery on the matter of Wheeler's KPERS contributions may occur until **May 10, 2024**.

- The proposed pretrial order is due by **May 24, 2024**.

- The pretrial conference is rescheduled for **June 5, 2024, at 10:00 a.m.**

- Potentially dispositive motions and motions challenging the admissibility of expert testimony are due by **July 8, 2024**.

**IT IS SO ORDERED.**

Dated April 22, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
